UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEANDRE COFFER,
     Petitioner,

v.                                                              Case No. 8:23-cv-10-KKM-LSG

SECRETARY, DEPARTMENT
OF CORRECTIONS,
     Respondent.

_____

## <u>ORDER</u>

Coffer, a Florida prisoner, timely[1] filed a pro se Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, (*id.*), and

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). Coffer's conviction and sentence were affirmed on appeal on February 26, 2021. (Doc. 7-2, Ex. 13.) His judgment became final 90 days later, on May 27, 2021, when the time to petition the Supreme Court of the United States for a writ of certiorari expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). Before that date, on May 25, 2021, Coffer filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 8-2, Ex. 14.) The state court denied Coffer's motion on January 6, 2022. (Doc. 8-2, Ex. 17.) The motion remained pending until February 7, 2022, upon expiration of the 30-day period to appeal the denial. *See Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383-84 (11th Cir. 2006); Fla. R. Jud. Admin. 2.514(a)(1)(C). Coffer's AEDPA limitation period began to run the next day, February 8, 2022. Coffer filed his § 2254 petition less than one year later, on December 21, 2022. The petition is therefore timely.

the response in opposition, (Doc. 7), the petition is denied.[2] Because reasonable jurists would not disagree, a certificate of appealability also is not warranted.

## I.    BACKGROUND

### A. Procedural Background

A state court jury convicted Coffer of one count of first-degree murder. (Doc. 8-2, Exs. 2 & 5.) The state trial court sentenced him to life in prison. (Doc. 8-2, Ex. 6.) The state trial court denied Coffer's motion for a new trial. (Doc. 8-2, Exs. 7 & 8.) The state appellate court per curiam affirmed the conviction and sentence. (Doc. 8-2, Ex. 13.) Coffer moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 8-2, Ex. 14.) The state court denied Coffer's motion. (Doc. 8-2, Exs. 15, 17.) The state appellate court denied Coffer's motion for a belated postconviction appeal. (Doc. 8-2, Exs. 19 & 20.)

### B. Factual Background

Coffer lived with his girlfriend, Kiara Butler, their infant daughter, and Coffer's three-year-old son. On the evening of February 17, 2018, Coffer and Butler were lying on a bed with Coffer's son while Butler read a book with the child. (Doc.

---

[2] Coffer did not file a reply.

8-2, Ex. 3, pp. 559-60.) Butler asked Coffer's son questions about pictures in the book, such as "What do you see?" (*Id.*) When Butler corrected Coffer's son about the number of apples he counted in one of the pictures, Coffer told his son to leave the room. (*Id.*, p. 560.)

Coffer would later tell police that the book was about voodoo, that he got a bad feeling when Butler went over the material in the book with his son, and that Butler was trying to do "mind control and all kinds of shit" with his son. (*Id.*, pp. 557-60, 576-79.) Coffer told police that Butler "snapped" and "started to come at him," striking him. (*Id.*, pp. 557, 583-84, 599.) Coffer said that Butler looked like she wanted to kill him and was hissing like a snake while she approached him. (*Id.*, pp. 561-62, 569-70.) Coffer stated that "the bitch came and tried to strike me first." (*Id.*, p. 599.) Coffer then hit Butler with his fist. (*Id.*, p. 567-68.) Coffer said that after he "beat her ass," he choked Butler before punching her again. (*Id.*, pp. 598-600.)

When Coffer stopped, he took the children, walked to a neighbor's house, and called 911. He told the 911 operator that "the bitch" came after him, that he did not know if Butler was alive or dead, and that police should come to the house or she would be dead. (*Id.*, pp. 510-12, 515, 519-24.)

Officers who responded to the 911 call found Butler's body in a pool of blood on the bedroom floor. (*Id.*, p. 341.) Coffer was transported to a police station, where he waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and agreed to talk to officers. As addressed above, Coffer stated that he hit and strangled Butler, who he alleged was the aggressor and was trying to practice voodoo.

Assistant Medical Examiner Dr. Vera Volnikh testified that Butler had numerous blunt impact wounds to the face as well as injuries corresponding to manual strangulation. (*Id.*, pp. 447-48.) She testified that the locations of contusions and abrasions on Butler's face indicated that Coffer struck her at least four or five times. (*Id.*, pp. 452-53.) Dr. Volnikh testified that the blunt force injuries were consistent with Butler's having been hit by a fist. (*Id.*, p. 466.) Butler's injuries also included a contusion on her scalp, a brain hemorrhage, a fracture at the base of her skull, a broken nose, a broken tooth, and a laceration of her tongue. (*Id.*, pp. 448-49, 453-56.) Dr. Volnikh testified that it would have taken a "really hard blow" to cause the damage to Butler's tongue. (*Id.*, p. 455.) That same blow also might have been responsible for breaking Butler's tooth. (*Id.*, pp. 455-56.)

Dr. Volnikh also testified that injuries to Butler's neck were consistent with manual strangulation. She noted bruising to deep muscles in Butler's neck. (*Id.*, pp.

4

462-63.) Dr. Volnikh testified that it takes "about two or three minutes" to become unconscious due to strangulation. (*Id.*, pp. 473-74.) Dr. Volnikh found that Butler's manner of death was homicide and that her cause of death was blunt impact to the head and manual strangulation. (*Id.*, p. 468.)

Coffer presented a defense of insanity. Coffer called Dr. Tracey Henley, a clinical psychologist who interviewed Coffer four times. Dr. Henley testified that, in her opinion, Coffer suffered from unspecified schizophrenia spectrum and other psychotic disorder and was insane at the time of the crime. (*Id.*, pp. 646-47, 655.) Dr. Henley opined that, at the time of the murder, Coffer knew that killing was wrong but believed that he was morally justified in killing Butler because he thought that she was casting an evil spirit of voodoo on the children and he perceived her to be a demon that was going to kill him or the children. (*Id.*, pp. 662-66.) Dr. Henley testified that Coffer "didn't seem to be in contact with the reality of the situation, or appreciate the gravity of the situation." (*Id.*, pp. 645, 665.) Dr. Henley testified that earlier in the state court proceedings, she found that Coffer was not competent to proceed, but that he regained competency before trial. (*Id.*, pp. 637-40.)

The State called Dr. Michael Gamache, a psychologist who met with Coffer, in rebuttal. Dr. Gamache testified that he did not believe Coffer was insane at the

time of the crime. (*Id.*, pp. 677.) Dr. Gamache found that Coffer knew what he was doing and had the capacity to appreciate both the wrongful nature and possible consequences of his actions. (*Id.*, p. 737.) Dr. Gamache testified that Coffer did not suffer from a mental illness other than substance abuse. (*Id.*, pp. 736-37.) Dr. Gamache testified that he tested Coffer for malingering. (*Id.*, p. 721.) Dr. Gamache explained that the malingering tests are "very sensitive" and that "if somebody gets a score that exceeds the threshold, you can be pretty confident that they're faking." (*Id.*) He testified that Coffer's score on the malingering test was more than twice the threshold score. (*Id.*)

Dr. Gamache believed that evidence, including the 911 call and videotaped interview, showed that Coffer was oriented and was not confused, provided relevant information, and responded relevantly to questions. (*Id.*, pp. 731, 733-35.) Dr. Gamache testified that, in his opinion, Coffer's "vague references to voodoo or to black magic are just his colloquialisms for characterizing something that he perceived [Butler] doing that he didn't agree with, that he thought was harmful and detrimental to his son." (*Id.*, p. 731.) Dr. Gamache testified that, in his experience, "what [Coffer] said and how he said it" during the police interview was inconsistent with the way persons who are psychotic or actively schizophrenic would have

responded. (*Id.*, p. 733.) Dr. Gamache also testified that Coffer made social media posts in the time leading up to Butler's death, and that those posts support the conclusion that "there was no real deterioration in his functional abilities in the days and weeks" before the murder. (*Id.*, pp. 728-29.)

## II.   <u>STANDARD OF REVIEW UNDER SECTION 2254</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Sec'y, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the

unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioner's factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is

because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256

F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III.   STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Coffer brings claims for ineffective assistance of trial counsel. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed Coffer must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes

deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

IV.    <u>ANALYSIS</u>

   A. Ground One

   Coffer contends that the state trial court erred in denying his motion for judgment of acquittal (JOA) for first-degree premeditated murder because the State failed to prove the element of premeditation. In moving for a JOA after the State's case-in-chief, Coffer asserted that the evidence was sufficient to show only that he acted in the heat of passion or in mutual combat. (Doc. 8-2, Ex. 3, p. 621.) Coffer also argued that his calling 911 for help and stating that he did not know whether Butler was dead showed a lack of premeditation. (*Id.*, p. 622.) Coffer renewed his motion for a JOA after the State's rebuttal case, asserting that the State could not prove premeditation as a matter of law following Dr. Henley's testimony that Coffer was insane at the time of the murder. (*Id.*, pp. 775-76.) Coffer alleges that the state trial court violated his federal due process rights when it denied his motion and renewed motion.

Coffer has not shown entitlement to relief. The federal sufficiency-of-the-evidence standard, articulated in *Jackson v. Virginia*, asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. 307, 319 (1979). The *Jackson* standard is "applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

In Florida, first-degree premeditated murder is "[t]he unlawful killing of a human being . . . [w]hen perpetrated from a premeditated design to effect the death of the person killed or any human being." § 782.04(1)(a)(1), Fla. Stat. "Premeditation is defined as more than a mere intent to kill; it is a fully formed conscious purpose to kill." *Perry v. State*, 801 So.2d 78, 84 (Fla. 2001) (quoting *Green v. State*, 715 So.2d 940, 943 (Fla. 1998)). "[P]remeditation can be formed in a moment before the killing and need only exist for enough time to allow the defendant to be aware of what he is about to do and the likely result of his actions." *Morris v. State*, 283 So.3d 436, 439 (Fla. 1st DCA 2019).

The state trial court did not unreasonably deny Coffer's motion for a JOA. Coffer pointed to Florida law that evidence of killing by strangulation alone is insufficient to support a jury finding of premeditation. (Doc. 8-2, Ex. 3, p. 621); *see*

*Bigham v. State*, 995 So.2d 207 (Fla. 2009). But evidence of strangulation "in conjunction with one or more additional facts indicating that the killer had time to reflect upon his actions and to form a conscious purpose to kill, justifies submitting the question of premeditation to the jury for its determination." *Balzourt v. State*, 75 So.3d 830, 835 (Fla. 2d DCA 2011) (quoting *Berube v. State*, 5 So.3d 734, 744 (Fla. 2d DCA 2009)).

The State presented evidence that Coffer struck Butler in the face and head at least five times, causing injuries including a contusion on her scalp, a fracture to the base of her skull, a broken nose, a brain hemorrhage, a broken tooth, and a lacerated tongue, before manually strangling her with enough force to bruise her deep neck muscles. Further, Coffer admitted hitting and strangling Butler and told police that he "needed to beat her ass." (Doc. 8-2, Ex. 3, p. 600.)

In denying Coffer's motion for a JOA, the state trial court emphasized that (1) the strangulation was forceful enough to bruise Butler's deep neck muscles, and (2) there was evidence, unrelated to the strangulation, of five separate incidents of blunt force trauma to the Butler's face and that these injuries contributed to the cause of death. (Doc. 8-2, Ex. 3, pp. 629-30.) As to the 911 call, the state trial court noted that, although the call "would seem to indicate" a lack of intent, on the other hand,

"it's been my experience that remorse on the part of a killer after the killing is not unusual." (Doc. 8-2, Ex. 3, p. 629.) Thus, the state trial court found that the State's evidence was sufficient to withstand the motion for a JOA. (*Id.*)

Additionally, Dr. Gamache gave opinion testimony that Coffer did not suffer from mental illness apart from substance abuse, was not insane at the time of the offense, and was malingering. This evidence was before the state court when it denied Coffer's renewed motion for a JOA. Coffer has not shown that, taking the evidence in the light most favorable to the State, no reasonable juror could have found premeditation beyond a reasonable doubt. Because Coffer fails to show that the state appellate court's decision affirming the denial of his JOA motion was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination, he is not entitled to relief on Ground One.

## B. Ground Two

### 1. Introduction

Coffer argues that the state trial court violated his due process rights by providing a part of the jury instruction on insanity that "was inapplicable and not requested." (Doc. 1, p. 9.) Coffer also argues that the instruction "was prejudicial

and deprived [him] [of] his theory of defense and due process under the Fourteenth Amendment." (*Id.*)

Coffer's trial counsel requested a jury instruction on the defense of insanity with hallucinations as set out in Florida Standard Jury Instruction (Criminal) 3.6(b). (Doc. 8-2, Ex. 3, p. 769.)[3] But the State pointed out that this instruction only applied to crimes committed before June 19, 2000. (*Id.*, p. 770.) Therefore, the State responded that Instruction 3.6(a) represented the "current state of the law" relevant to Coffer's case. (*Id.*, pp. 769-70.) Defense counsel stated that she had not seen the limitation on Instruction 3.6(b) and agreed that "if it's not applicable, then it's not." (*Id.*, pp. 770-71.) Accordingly, the trial court gave the jury standard jury instruction on insanity contained in Instruction 3.6(a). The instruction began by stating:

A person is considered to be insane when:

1.   He had a mental infirmity, disease, or defect.

2.   [B]ecause of this condition

     He did not know what he was doing or its consequences

     -or-

---

[3] The standard jury instruction provides for this defense when a person "had a mental infirmity, disease, or defect" and "[b]ecause of this condition, the person had hallucinations or delusions which caused the person to honestly believe to be facts things that are not true or real." Fla. Std. Jury Instr. (Crim.) 3.6(b).

18

> Although he knew what he was doing and its consequences, he
> did not know it was wrong.
>
> All persons are presumed to be sane. The defendant has the burden of
> proving the defense of insanity by clear and convincing evidence. Clear
> and convincing evidence is evidence that is precise, explicit, lacking in
> confusion, and of such weight that it produces a firm belief, without
> hesitation, about the matter in issue.

(Doc. 8-2, Ex. 4, doc. p. 879); *see* Fla. Std. Jury Instr. (Crim.) 3.6(a).

Coffer's claim focuses on a subsequent paragraph. The standard instructions

note that this paragraph should be given "if applicable and if requested." Fla. Std.

Jury Instr. (Crim.) 3.6(a). The jury was instructed:

> Although insanity is a defense, mental or psychiatric conditions not
> constituting insanity are not defenses to any crime in this case. Unless
> there is clear and convincing evidence that Deandre Coffer was insane
> at the time of the crime alleged, any evidence of mental illness, an
> abnormal mental condition, or diminished mental capacity may not be
> taken into consideration to show that he lacked the specific intent or
> did not have the state of mind essential to proving that he committed
> the crime charged or any lesser crime.

(Doc. 8-2, Ex. 4, doc. p. 880); *see* Fla. Std. Jury Instr. (Crim.) 3.6(a).

After the trial ended, counsel moved for a new trial. She asserted that she "did

not realize that" this paragraph "was a 'give if applicable' instruction until after the

trial." (Doc. 8-2, Ex. 7.) Trial counsel asserted that the paragraph was contrary to

the evidence, resulted in confusion, and violated Coffer's due process rights. (*Id.*)

The trial court denied the motion without discussion. (Doc. 8-2, Ex. 8.)

### 2. Trial Court Error

Coffer has not shown that the state appellate court unreasonably denied his

claim of trial court error regarding the insanity instruction. Because Coffer did not

object to the instruction at trial, he was required to show that giving the instruction

was fundamental error. *See Flores v. State*, 391 So.3d 481 (Fla. 4th DCA 2024).

"Fundamental error is error that reaches down into the validity of the trial itself to

the extent that a verdict of guilty could not have been obtained without the assistance

of the alleged error." *Peterka v. State*, 890 So.2d 219, 243 (Fla. 2004) (internal

quotation marks and citation omitted). Similarly, "[a]n error in instructing the jury

cannot constitute a basis for federal habeas relief unless the error 'so infected the

entire trial that the resulting conviction violates due process.'" *Romanes v. Sec'y,

Dep't of Corr.*, 621 F.Supp.2d 1249, 1263 (M.D. Fla. 2008) (quoting *Henderson v.

Kibbe*, 431 U.S. 145, 154 (1977)).

The state appellate court reasonably could have concluded that Coffer failed

to show a fundamental error in the jury instructions that deprived him of due process.

As stated, Coffer presented the affirmative defense of insanity at the time of the

offense. *See* § 775.027, Fla. Stat. (defining the elements of the insanity defense and providing that the defendant has the burden of proving insanity by clear and convincing evidence). But diminished mental capacity that does not rise to the level of insanity is not a defense to criminal charges. *See* § 775.027(1)(b)(2), Fla. Stat. ("Mental infirmity, disease, or defect does not constitute a defense of insanity except as provided in this subsection."); *Filomeno v. State*, 930 So.2d 821, 822 (Fla. 5th DCA 2006) (stating that the defense of diminished capacity is "not recognized in Florida").

Coffer presented evidence of mental impairment through Dr. Henley's testimony about his unspecified schizophrenia spectrum and other psychotic disorder, and her findings that Coffer had been incompetent earlier in the proceedings. The instruction accurately informed the jurors that, if they did not find by clear and convincing evidence that Coffer was insane, evidence of his mental impairment could not be considered a defense.

Coffer has not shown that the state trial court committed fundamental error by accurately instructing the jurors about limitations on their consideration of the mental health evidence presented at trial. He has not demonstrated that the state appellate court's decision was contrary to or involved an unreasonable application of

clearly established federal law or was based on an unreasonable factual determination.

### 3. Ineffective Assistance of Trial Counsel

Coffer also contends that trial counsel was ineffective for not objecting to this part of the instruction. First, to the extent that Coffer raised this claim on postconviction relief, the claim is procedurally defaulted and barred from federal habeas review. Coffer presented this claim to the state postconviction court, which denied relief. (Doc. 8-2, Exs. 14 & 17.) But Coffer did not timely appeal the denial of relief, and his petition for a belated appeal was denied. (Doc. 8-2, Exs. 19 & 20.)

In Florida, a petitioner must appeal the denial of postconviction relief to complete one full round of the state's established review process. *See Leonard v. Wainwright*, 601 F.2d 807 (5th Cir. 1979). Even though Coffer cannot return to state court to pursue an untimely postconviction appeal, *see* Fla. R. Crim. P. 3.850(k), the claim is technically exhausted. State-court remedies are exhausted "when they are no longer available, regardless of the reason for the unavailability." *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (quoting *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006)). But Coffer's ineffective assistance claim is procedurally defaulted because it was "not presented to the state courts 'consistent with [the State's] own

procedural rules' " requiring the claim's denial to be appealed to the state district court of appeal. *Ramirez*, 596 U.S. at 378 (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).

Coffer has not shown a basis to excuse the default. He argues that he meets the cause and prejudice exception under *Martinez v. Ryan*, 566 U.S. 1 (2012). But *Martinez* only applies to ineffective assistance of trial counsel claims that are defaulted because they were not raised in the state court initial-review collateral proceedings. *Martinez* "does not concern . . . appeals from initial-review collateral proceedings or "any proceeding beyond the first occasion the State allows a prisoner to raise a claim" of ineffective assistance of trial counsel. 566 U.S. at 16; *see Lambrix v. Sec'y, Dep't of Corr.*, 756 F.3d 1246, 1260 (11th Cir. 2014) ("Importantly, the *Martinez* rule is expressly limited to . . . initial-review collateral proceedings."). Because the default of this claim was due to Coffer's failure to timely appeal its denial, *Martinez* does not apply to meet the cause and prejudice exception. The claim is procedurally defaulted and barred from federal habeas review.

Coffer also fails to show entitlement to relief based on the state court's denial of this claim on direct appeal. An ineffective assistance of trial counsel claim can be considered on direct appeal "in the rare circumstance when counsel's deficient

23

performance is 'obvious on the face of the appellate record,' 'a tactical explanation' for counsel's performance 'is inconceivable,' and 'the prejudice caused by the conduct is indisputable.' " *Howard v. State*, 288 So.3d 1239, 1249 (Fla. 2d DCA 2020) (quoting *Corzo v. State*, 806 So.2d 642, 645 (Fla. 2d DCA 2002)).[4]

Assuming that the state appellate court reviewed the claim on the merits, its denial was not unreasonable. As addressed, the identified paragraph of the instruction informed the jurors that they could not consider evidence of diminished capacity as a defense unless they found that Coffer was insane. The instruction accurately stated the law and was consistent with Florida's standard jury instructions. Coffer fails to show that counsel was ineffective for not objecting to the instruction. Nor does he show a reasonable probability of a different outcome at trial had counsel objected to this instruction. Thus, the state appellate court could have reasonably found that Coffer failed to show that his case involved the sort of "rare circumstance" where ineffective assistance of trial counsel was so obvious from the record that it warranted relief on direct appeal.

---

[4] After Coffer's appeal, the Supreme Court of Florida held that unpreserved claims of ineffective assistance of counsel cannot be raised or result in reversal on direct appeal. *Steiger v. State*, 328 So.3d 926, 929 (Fla. 2021).

Coffer has not shown that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. Coffer is not entitled to relief on Ground Two.

## C. Ground Three

Coffer asserts that trial counsel was ineffective for failing to file a pretrial motion to dismiss the first-degree premeditated murder charge under Florida's stand your ground law. He also contends that trial counsel was ineffective for not arguing self-defense at trial.

### 1. Pretrial Motion to Dismiss Under the Stand Your Ground Law

Coffer argues that trial counsel should have filed a pretrial motion to dismiss the charge based on Florida's Stand Your Ground law. While Coffer asserted in his postconviction motion that counsel should have pursued a defense of self-defense at trial, he did not specifically argue that counsel should have filed a pretrial motion to dismiss under the Stand Your Ground law. (Doc. 8-2, Ex. 14.) Thus, this aspect of Coffer's claim was not fairly presented to the state courts. Because Coffer cannot return to state court to present the claim in an untimely and successive postconviction motion, *see* Fla. R. Crim. P. 3.850(b), (h), it is procedurally defaulted. *Ramirez*, 596 U.S. at 378.

25

Coffer argues that the Court should forgive the default because he was pro se during postconviction proceedings. To the extent that Coffer seeks to establish cause and prejudice under *Martinez* to excuse the default, he is not entitled to relief. *Martinez* provides that a § 2254 petitioner can show cause for the default of an ineffective assistance of trial counsel claim when "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective" and the defaulted claim is "substantial" in that it "has some merit." *Id.* at 14, 17. A claim without any merit or that is wholly without factual support is not substantial. *See id.* at 15-16.

Under Florida's Stand Your Ground law, a person who uses force as permitted by Florida law "is immune from criminal prosecution." *See* § 776.032(1), Fla. Stat. "The Stand Your Ground immunity statute is invoked if the defendant admits to the conduct charged, but asserts that the conduct was justified as self-defense under the circumstances." *State v. Marrero*, 299 So.3d 489, 491 (Fla. 3d DCA 2020). Once a defendant raises "a prima facie claim of self-defense immunity from criminal prosecution," the State must show by clear and convincing evidence that the defendant was not acting in self-defense. § 776.032(4), Fla. Stat.

This immunity from prosecution is available for "[a] person who uses or threatens to use force as permitted in s. 776.012, s. 776.013, or s. 776.031." § 776.032(1), Fla. Stat. And under § 776.012(2), Fla. Stat., a person is justified in using deadly force if he "reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself . . . or another or to prevent the imminent commission of a forcible felony." In such a circumstance, the person using force "does not have a duty to retreat and has the right to stand his . . . ground if the person using . . . the deadly force is not engaged in a criminal activity and is in a place where he . . . has a right to be." *Id*.

Coffer's argument tracks this language. He asserts that he "was not engaged in unlawful activity and was in his home where he had a right to be" and that he "reasonably believed he needed to use the deadly force to prevent imminent great bodily harm to himself or his children." (Doc. 1, p. 13.) Accordingly, the Court interprets his claim as arguing that he was entitled to Stand Your Ground immunity because he was justified in using deadly force under § 776.012(2), Fla. Stat.

"Deadly force used in self-defense occurs 'where the natural, probable, and foreseeable consequences of the defendant's acts are death.'" *Croft v. State*, 291 So.3d 1285, 1288 (Fla. 5th DCA 2020 (quoting *Copeland v. State*, 277 So.3d 1137,

27

1140 (Fla. 5th DCA 2019)). Coffer contends that the evidence introduced at trial shows that Butler, who weighed more than him, "was the aggressor [and] attacked Coffer initially, and that Coffer retaliated [by] beating the victim and strangling her to death believing that he was doing so in order to protect himself and his children." (Doc. 1, p. 12.)

"Whether a defendant was justified in using a particular level of force against another must be evaluated in accordance with 'the objective, reasonable person standard.' " *Paese v. State*, 381 So.3d 4, 12 (Fla. 4th DCA 2024) (quoting *Bouie v. State*, 292 So.3d 471, 481 (Fla. 2d DCA 2020)). "Under that standard, the legal question to be resolved in all [Stand Your Ground] cases is whether 'a reasonable and prudent person in the same position as the defendant would believe' that the level of authorized force used was 'necessary' to prevent the harm or offense for which such force is statutorily permitted." *Paese*, 381 So.3d at 12 (quoting *Bouie*, 292 So.2d at 481).

Coffer has not alleged facts showing a reasonable probability that a motion to dismiss based on the Stand Your Ground law would have succeeded. Coffer alleges in a conclusory manner that Butler weighed more than him and was the aggressor. But Coffer has not alleged other facts supporting his claim or explaining why he

needed to use deadly force. He does not allege, for instance, that Butler had a weapon at that time or made any verbal threats to hurt him or the children. Nor does Coffer allege that Butler inflicted any injury on him. Indeed, Coffer's injuries were to his right hand, which was the hand he admitted he used to strike Butler. (Doc. 8-2, Ex. 3, pp. 377-78, 567-68.) Thus, even accepting Coffer's allegations as true, he fails to show that, under the "objective, reasonable person standard," the use of deadly force was necessary to protect himself or his children from imminent great bodily harm.

Under these circumstances, Coffer does not show that his trial counsel performed deficiently in not moving to dismiss under the Stand Your Ground law, or that there is a reasonable probability a motion would have been granted and the outcome of the proceedings would have been different. Because Coffer therefore has not shown that his defaulted claim of assistance of trial counsel is substantial, he fails to demonstrate that the default should be excused under *Martinez*. Coffer's claim of ineffective assistance of trial counsel for failure to file a pretrial motion to dismiss based on the Stand Your Ground Law is barred from federal habeas review.

### 2. Theory of Self Defense at Trial

Coffer argued in his postconviction motion that trial counsel was ineffective for not pursuing the defense of self-defense at trial. (Doc. 8-2, Ex. 14.) But, as

addressed, Coffer did not timely appeal from the order denying that motion, and the state appellate court denied Coffer's petition for a belated appeal. (Doc. 8-2, Exs. 19 & 20.) Coffer's failure to complete one round of the state's established review process leaves his claim procedurally defaulted. *Ramirez*, 596 U.S. at 378. Coffer has not shown that an exception applies to excuse the default. As addressed, *Martinez* does not apply because the procedural default of Coffer's claim was caused by his failure to timely file a postconviction appeal. 566 U.S. at 16; *Lambrix*, 756 F.3d at 1260. Accordingly, Coffer's claim of ineffective assistance of trial counsel for failure to argue a defense of self-defense is procedurally defaulted and is barred from federal habeas review. Coffer is not entitled to relief on Ground Three.

## D. Ground Four

Coffer seeks relief based on the cumulative effect of the errors alleged in his petition. When Coffer alleged cumulative error in his postconviction motion, the state court denied the claim due to its findings that Coffer's other claims lacked merit. (Doc. 8-2, Ex. 17, p. 6.) For the same reasons already addressed, this claim is procedurally defaulted because Coffer did not appeal its denial. Notwithstanding the default, Coffer is not entitled to relief. A cumulative error claim must fail when none of the "individual claims of error or prejudice have any merit." *Morris v. Sec'y, Dep't*

*of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Because Coffer has not shown that any individual claim of error is meritorious, Ground Four does not warrant relief.

## V.   CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Coffer must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Coffer has not made the requisite showing. Finally, because Coffer is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Coffer's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Coffer and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on May 28, 2025.

Kathryn Kimball Mizelle
United States District Judge